Filed 1/21/14  In re A.C. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.C., a Person Coming Under the Juvenile Court Law. | B249179 (Los Angeles County Sup. Ct. No. CK97833) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>G.F.,<br><br>Defendant and Appellant. | |

Appeal from orders of the Superior Court of Los Angeles County.  Stephen Marpet, Juvenile Court Referee.  Affirmed.

Eva E. Chick, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jessica S. Mitchell, Senior Associate County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Appellant G.F. (mother) appeals from the juvenile court's jurisdiction and disposition orders adjudging her minor daughter (A.C.) a dependent of the juvenile court. Mother challenges only the jurisdictional finding pursuant to Welfare and Institutions Code section 300, subdivision (b)[1] as it relates to her, but not as to Alphonso C. (father). Mother contends the amended jurisdictional finding fails to state a basis upon which dependency jurisdiction can be based, and is not supported by substantial evidence. Mother also challenges the disposition orders directing her to participate in individual counseling and attend parenting classes.

Mother's arguments are unavailing. The jurisdictional allegation is both facially adequate and supported by substantial evidence. As for the disposition orders, mother failed to object and therefore forfeited her contentions, but the disposition orders were nonetheless well within the juvenile court's broad discretion. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2013, the Los Angeles County Department of Children and Family Services detained A.C. after she reported to a school counselor (as well as to a deputy sheriff called to the school) that father had tried to choke her and threw her cell phone at her head, and she was afraid to return home. The Department social worker spoke with mother by telephone from her residence in Fresno. Mother told the social worker she had sent A.C. to live with her father a couple of months earlier. Mother said she would not take A.C. back into her home, that no family members in Fresno would take her (she also refused to provide any contact information for relatives), and that the Department should "go ahead" and detain A.C. in foster care.

The Department filed a petition stating allegations of physical abuse by father (§ 300, subd. (a)), and failure to protect by both mother and father (§ 300, subd. (b)). Pending the detention hearing, A.C. was placed in foster care.

---

**1** All further undesignated section references are to the Welfare and Institutions Code.

At the February 20, 2013 detention hearing, both mother and father appeared and were appointed counsel. The court found father to be the presumed father[2] and, over the Department's objection, ordered A.C. released to her father's custody. The court ordered maintenance and family preservation services, including counseling for father and A.C. The parties were ordered back for adjudication of the petition on April 4, 2013.

The Department's jurisdiction and disposition report summarized the circumstances, in relevant part, as follows. Mother had primary custody of A.C. after mother's divorce from father. In December 2012, A.C. was kicked out of mother's house in Fresno and went to live with father in Los Angeles. A.C. had a tumultuous relationship with mother. According to mother, their disagreements were the result of A.C. displaying a "smart ass" attitude and running away. According to A.C., she did not run away, but rather was forced to look for places to stay, like her maternal grandmother's house or friends from her grandmother's church, because mother constantly beat her, called her demeaning names and threw her out of the house.

Mother reported A.C. constantly lied, including falsely accusing mother's current husband of sexually assaulting her and allegedly "faking" a pregnancy. Mother believed A.C. needed psychological evaluation. The social worker reported that mother continued to refuse to have A.C. placed in her custody, asserting that she was "tired" of the child and the problems she caused, and if father did not want to care for her, then she should be placed in foster care. Mother continued to assert that A.C. was trying to ruin her marriage, that she manipulated everyone, and that she did not believe father physically hurt A.C. because "[h]e's a wimp." Mother said "I do not want her" but if A.C. admitted she had lied about everything, then she could return to mother's home after she turned 18.

Father admitted he pushed A.C. and threw her cell phone, causing it to break. He did not believe the phone hit A.C. as she had reported, but said it might have ricocheted off the door and hit her before it fell to the floor. Father denied choking A.C. Father

---

[2]    It is undisputed that A.C. was born while mother and father were married. They subsequently divorced.

3

admitted he gets angry easily and says things he does not mean when he is angry. He also said he was willing to go to counseling and do "whatever is needed" to keep his daughter at home and safe.

A.C. said she did not want to live with her mother. A.C. said mother hit her and always called her demeaning names, and only wanted her around, if at all, to do housework. A.C. said she thought she could remain living with her father, but felt they needed counseling to work out their conflicts. A.C. was receiving all A's at continuation school and was on track to timely graduate. The social worker reported that A.C. remained a "moderate" risk for future abuse while in father's custody.

Interviews with maternal relatives confirmed a long history of fighting between mother and A.C. One friend of mother's, Monica R., reported she witnessed an incident between mother and A.C. in the fall of 2012, shortly before A.C. moved in with her father. A.C. had made mother a hamburger, but mother complained it was not prepared the way she wanted it and got into an argument with A.C. about it. Mother repeatedly hit A.C. in the face. Monica stated she had to intervene to get mother to stop. Monica stated mother constantly berated A.C. The Department also reported nine previous referrals to the Department (eight while A.C. lived with her mother and mother's current husband), all of which were closed as unfounded.

The Department recommended A.C. remain with father and that he and A.C. receive family preservation services, individual counseling and conjoint counseling once a therapist deemed that appropriate. It was also recommended that father attend a class focused on parenting teenagers. It was recommended that mother be allowed monitored visitation, take parenting classes and receive individual counseling.

The jurisdiction and disposition hearing was held, as scheduled, on April 4, 2013. Father appeared with counsel. Mother was represented by counsel, but failed to appear despite the previous order that she appear on the noticed date. Father signed a waiver of rights form and submitted on the Department's reports. The court noted that counsel for the Department and father had negotiated amendments to the allegations in count b-2 of the petition.

The court found father made a knowing and voluntary waiver of his rights, understood "the nature of the conduct alleged in the petition and the possible consequences of his submission" and that there was "a factual basis for the submission." The court sustained the petition as amended and dismissed the remaining allegations. The sustained allegations read as follows:

"The child, [A.C.'s] mother, [G.F.] is unwilling to provide the child with care and supervision and the mother refused to allow the child to return to the mother's home and care, and as a result the child has behavioral problems, for which the father [Alphonso C.] has a limited ability to provide care and supervision of the child. Said facts on behalf of the father and the unwillingness of the mother to provide care and supervision of the child endangers the child's physical health and safety and places the child at risk of harm and damage."

Counsel for mother objected generally to the amendment and asked that it be stricken. The court sustained the petition as amended over mother's objection, explaining "I think there's sufficient evidence in the documentation to sustain the petition by a preponderance of evidence."

The court then proceeded with disposition. When the court began by indicating certain services for mother would be ordered, counsel for the Department interrupted and reiterated that mother did not want custody and therefore there was no basis for ordering reunification services for her. The court clarified it was not ordering reunification services for mother, just "enhanced" services. Father and A.C. were ordered to be in individual counseling and conjoint therapy. Father was also ordered to take a parenting class. Mother was ordered to take a parenting class and individual counseling. Mother was allowed monitored visitation. Mother's counsel raised no objections to the disposition orders.

This timely appeal followed.

## DISCUSSION

### 1. The Jurisdictional Finding

Mother contends the amended allegations (§ 300, subd. (b)) fail to state a proper basis for dependency jurisdiction. Mother further contends that, even if the petition is adequately pled, there is insufficient evidence in support of the court's jurisdictional finding. Mother does *not* expressly contest the jurisdictional finding as it applies to father.

The focus of dependency proceedings is on the protection of minor children. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491-1492.) To acquire jurisdiction over a child, a juvenile court need only "find that one parent's conduct has created circumstances triggering section 300." (*Ibid*.) "[I]t is commonly said that a jurisdictional finding involving one parent is ' "good against both. More accurately, the minor is a dependent if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent." ' [Citation.]" (*Id*. at p. 1492.) " 'This accords with the purpose of a dependency proceeding, which is to protect the child, rather than prosecute the parent.' [Citation.]" (*In re X.S.* (2010) 190 Cal.App.4th 1154, 1161.) As a result, "an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence." (*In re I.A.*, *supra*, at p. 1492.)

Even if we considered reversing the jurisdictional finding as to mother, the juvenile court would retain jurisdiction over A.C. based on the sustained, and unchallenged, allegation against father. Therefore, mother's attack on the jurisdictional finding relative to her conduct alone is nonjusticiable. (*In re I.A.*, *supra*, 201 Cal.App.4th at pp. 1490-1491 ["An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status."].)

Nonetheless, we will briefly address mother's arguments on the merits, including mother's challenge to the disposition orders. (See *In re Drake M*. (2012) 211 Cal.App.4th 754, 762.)

6

Mother first contends the amended allegations are facially deficient and that she is entitled to raise the claim on appeal, despite her failure to demur below, because the allegation was amended at the adjudicatory hearing, leaving mother with no opportunity to file a demurrer. We are not persuaded.

As a general rule, a pleading challenge to a dependency petition may not be raised for the first time on appeal. (*In re Christopher C.* (2010) 182 Cal.App.4th 73, 82-83; cf. *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 [allowing parent to raise facial challenge for the first time on appeal].) " 'Given that lay social workers are usually lumbered with the task of writing petitions, they must be given a certain amount of slack. If the parent believes that the petition does not "adequately communicate" the [Department's] concerns or is otherwise misleading, the onus is on the parent to challenge the petition at the pleading stage.' [Citation.]" (*In re S. O.* (2002) 103 Cal.App.4th 453, 459 [rejecting *Alysha S.* and explaining that cases following the general rule represent the "better view"].)

More to the point, the allegations amended at the time of the adjudicatory hearing were focused *on father's conduct* and his inability to properly provide care for A.C. after she had been turned out of mother's home. The core allegation against mother in count b-2 remained the same as the original allegations in the petition, which mother also did *not* contest by way of demurrer. On such facts, we cannot accept that mother may properly lay claim to lack of notice as to the nature of the allegations, or the right to raise a facial challenge for the first time on appeal. The fact the amended allegations included language that A.C. exhibits behavioral problems resulting from her mother's abandonment which, in turn, impacts father's abilities as the custodial parent does not alter the analysis.

We also reject mother's contention the record does not contain sufficient evidence supporting the court's jurisdictional finding. " 'On appeal from an order making jurisdictional findings, we must uphold the court's findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial

7

evidence to support the findings. [Citation.]' [Citation.]" (*In re Christopher C.*, *supra*, 182 Cal.App.4th at p. 84.)

The record summarized above contains ample evidence supporting the court's findings. Mother continued to refuse to have A.C. in her home or provide parenting of any type. Mother continued to malign A.C. and contended that everything was the result of A.C.'s bad behavior, while she remained blameless. A.C. expressed continued abandonment issues and a desire to find "closure" with her mother, problems that had impacted her behavior in the past and reasonably could be expected to cause ongoing problems for her and father as they adjusted to living together in father's home.

## 2.    The Disposition Orders

It is a fundamental principle of appellate jurisprudence that issues not timely preserved below by way of objection will be deemed forfeited. (*People v. Saunders* (1993) 5 Cal.4th 580, 589-590.) The purpose behind this rule is "to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, superseded by statute on other grounds as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962.) The forfeiture rule applies in dependency matters. (*In re Dakota S*. (2000) 85 Cal.App.4th 494, 502.)

Notwithstanding the foregoing, an appellate court does have the right to excuse a forfeiture in appropriate circumstances. But, "[a]though an appellate court's discretion to consider forfeited claims extends to dependency cases [citations], the discretion must be *exercised with special care* in such matters. 'Dependency proceedings in the juvenile court are special proceedings with their own set of rules, governed, in general, by the Welfare and Institutions Code.' [Citation.] Because these proceedings involve the well-being of children, considerations such as permanency and stability are of paramount importance. (§ 366.26.)" (*In re S.B.*, *supra*, 32 Cal.4th at p. 1293, italics added.)

Mother did not object in the trial court to any of the disposition orders. Mother has not articulated in briefing before this court any basis for excusing her forfeiture. In any event, the juvenile "court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this

discretion." (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006; see also *In re A.L.* (2010) 188 Cal.App.4th 138, 142-146 [juvenile court has broad discretion to fashion appropriate disposition orders in the form of reunification services, family maintenance services or "enhancement" services "designed to eliminate those conditions that led to the court's finding" that the child is a dependent child].) Even though mother expressed no desire to regain custody of A.C., she is still A.C.'s mother. Mother has failed to show any abuse of discretion in the court's order to offer her "enhanced" services in the form of individual counseling and a parenting class.

## DISPOSITION

The jurisdiction and disposition orders are affirmed.

GRIMES, J.

We concur:

BIGELOW, P. J.

RUBIN, J.