[No. G043221. Fourth Dist., Div. Three. Aug. 11, 2010.]

In re A.L., a Person Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
B.L., Defendant and Appellant.

140

---

COUNSEL

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen, Deputy County Counsel, and Julie J. Agin, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

---

OPINION

**BEDSWORTH, Acting P. J.**—B.L., the presumed father of A., appeals from the dispositional order in this dependency case. The court, after declaring A. a dependent of the juvenile court, ordered her returned to the custody of her mother—with whom she resided prior to the initiation of the dependency case—and the provision to B.L. of what the social worker referred to as family "enhancement" services. B.L. argues the court erred in failing to order he be provided with *reunification* services. He requests we reverse the order and remand the case with directions to issue a new dispositional order specifying he be provided with those reunification services. We will not.

Because parental custody of A. was not disrupted by the dispositional order, and she was not placed in foster care, there is no current need to "reunify" this family. Instead, the goal of this dependency proceeding is simply to "eliminate[e] the conditions or factors requiring court supervision." (Welf. & Inst. Code, § 364, subd. (b).)[1] Consequently, the court in this case had discretion to "direct any and all reasonable orders to the parents or

---

[1] All further statutory references are to the Welfare and Institutions Code.

guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out the provisions of this section . . . ." (§ 362, subd. (c).) For their part, the parents were "required to participate in child welfare services or services provided by an appropriate agency designated by the court." (§ 362, subd. (b).)

B.L. has made no showing that the "family enhancement" services ordered for him were not "reasonable," or did not constitute "child welfare services or services provided by an appropriate agency." Consequently, he has failed to demonstrate any error by the court in making its dispositional order. The order is affirmed.

## I

In August of 2009, three-month-old A. was taken to the emergency room by B.L. and her mother, and diagnosed with a transverse fracture of the femur which required emergency surgery. According to the parents, at the time of A.'s injury, she had been under B.L.'s temporary care at the residence he shared with a roommate. B.L. reported that he had been changing A.'s diaper, and had left her on his bed for a couple of minutes while he disposed of the soiled diaper. B.L. heard A. suddenly begin to cry, and ran back to find her "in a diagonal position at the foot of the bed." Although he tried to comfort her, she continued to cry. B.L. contacted A.'s mother at work, informing her that A. appeared to be crying "for some unknown reason." A.'s mother initially suspected colic, and suggested he continue holding A. until she stopped crying. When that proved unsuccessful, he contacted the mother again, and she told him she would leave work to take A. home.

After A.'s mother picked her up from B.L.'s home, and returned to her own home, she called him back to inform him A.'s leg appeared to be swollen and that she would be coming back to pick him up so they could take A. to the emergency room together.

Although A.'s mother did not initially suspect B.L. of physical abuse or neglect, doctors who examined A. at the hospital determined her injury was "non-accidental" and not consistent with the explanation given by B.L. Consequently, on August 28, 2009, the Orange County Social Services Agency (SSA) filed a dependency petition alleging that jurisdiction was proper under section 300, subdivisions (a), (b), and (e) on the grounds that A.

had suffered severe physical abuse while in the care of B.L., and that her mother had failed to protect her.

On August 31, the court held an initial hearing, at which time it determined that B.L. was the presumed father of A., who "is placed with mother." B.L. was given monitored visitation two times per week, although at the request of A.'s counsel, the court ordered that the visitation monitor would have to be someone other than A.'s mother.

The jurisdictional hearing was originally scheduled for September 28, 2009, but was continued several times. Meanwhile, on December 20, 2009, B.L. was involved in a stabbing incident outside of A.'s mother's apartment. Although he initially fled the scene, B.L. later turned himself in to the police.

When the jurisdictional hearing finally took place on January 26, 2010, B.L. submitted "on the factual evidence," which included physician reports reflecting the conclusion A.'s broken femur was inflicted nonaccidentally. The court found the allegations of the petition to be true.

With respect to disposition, SSA recommended family maintenance services for A.'s mother, and an "enhancement" plan for B.L. SSA's report explained that the evidence indicated B.L. was, and continued to be, "untruthful" about the cause of A.'s injury—which meant A. continued to be at significant risk if returned to his care. SSA concluded B.L. lacked the necessary parenting skills needed to care for A., and would need "further guidance and monitoring before he is able to safely be alone with the child."

SSA explained at the hearing that because the petition included a sustained jurisdictional count under section 300, subdivision (e), there was no requirement that any services be offered to B.L., but that it was recommending "enhancement" services—including "counseling and two components of education including parenting"—in the hope that would improve the relationship between B.L. and A.[2]

B.L. argued he was entitled to reunification services based upon section 362, which required that in a dependency case in which the child remains in

---

[2] As B.L. points out in his brief, there is apparently no statutory definition of "enhancement" services. We presume, based upon SSA's description, that it is a package of services designed to benefit the relationship between the child and noncustodial parent in a case where the child remains in the custody of the other parent.

parental custody, under the supervision of the social worker, both parents were entitled to "child welfare services or services provided by an appropriate agency designated by the court." B.L. pointed out that "child welfare services" is defined in section 16501, and that nothing in that section mentions "enhancement" services.

Ultimately, the court was unpersuaded by B.L.'s argument. In its ruling, the court noted that A.'s primary residence was with her mother, and that B.L. had been merely "providing day care temporarily" at the time of A.'s injury. The court ordered that A.'s mother would retain custody of her, and would be provided with family maintenance services. The court then found, by clear and convincing evidence, that reunification services need not be provided to B.L., pursuant to section 361.5, subdivision (b)(5), and additionally found that section 362, subdivision (b) was applicable. On that basis, the court ordered that B.L. be provided with the "enhancement" services recommended by SSA, but not with "reunification" services.

## II

B.L.'s argument, in a nutshell, is that this case is governed exclusively by section 362—which applies to the situation in which a child is declared a dependent of the court, but is retained in parental custody as part of the dispositional order—and not by section 361.5, which governs the situation in which a child is removed from parental custody.[3] B.L. contends the court thus erred in applying the "bypass" provision of section 361.5, which allows the court to deny reunification services to a parent who (among other things) is found to have committed "serious physical abuse" of the dependent child,[4] as grounds for denying him reunification services. B.L.'s position is that, absent the application of that bypass provision, the court was

---

[3] Section 361.5, subdivision (a) provides that "Except as provided in subdivision (b), or when the parent has voluntarily relinquished the child and the relinquishment has been filed with the State Department of Social Services, or upon the establishment of an order of guardianship pursuant to Section 360, whenever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians." The subdivision then goes on to refer to those services as "family reunification services."

[4] Section 361.5, subdivision (b) states that "Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence . . . [¶] . . . [¶] (5) [t]hat the child was brought within the jurisdiction of the court under subdivision (e) of Section 300 because of the conduct of that parent or guardian." Subdivision (e) of section 300 provides that dependency jurisdiction may be invoked in cases where a child "has suffered severe physical abuse by a parent . . . ."

obligated by the terms of section 362 to provide him with such reunification services. We cannot agree.

The fundamental problem with B.L.'s argument is that section 362, the statute he relies upon, does not say anything about "reunification services." Instead, subdivision (b) of that statute provides in pertinent part, "[w]hen a child is adjudged a dependent child of the court, on the ground that the child is a person described by Section 300 and the court orders that a parent or guardian shall retain custody of the child subject to the supervision of the social worker, the parents or guardians shall be required to participate in *child welfare services or services provided by an appropriate agency* designated by the court." (Italics added.) Although B.L. claims that the phrase "child welfare services" necessarily implies "reunification" services, we are unpersuaded by the contention.

Contrary to B.L.'s apparent belief, not all "child welfare services" are intended to promote "reunification." Instead, "reunification" is the goal of a dependency case only when, as a result of the dependency action, the existing custodial relationship between a parent or guardian, and the child, has been disrupted. In such a case, "reunification services" are designed to promote the goal of reunifying the family as it existed prior to the dependency. Thus "reunification" services are about restoring custody. (See *In re Nolan W.* (2009) 45 Cal.4th 1217, 1228 [91 Cal.Rptr.3d 140, 203 P.3d 454] ["[r]eunification services are typically understood as a benefit provided to parents, because services enable them to demonstrate parental fitness and so *regain custody* of their dependent children" (italics added)]; *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 843 [69 Cal.Rptr.3d 96, 172 P.3d 402] ["When a child is removed from a parent's custody, the juvenile court ordinarily must order child welfare services for the minor and the parent for the purpose of facilitating reunification of the family."]; § 202, subd. (a) ["If removal of a minor is determined by the juvenile court to be necessary, reunification of the minor with his or her family shall be a primary objective."].)

In fact, "reunification services" are merely a subset of the broader category of child welfare services which are specifically defined by statute. The term "child welfare services" is defined in section 16501, subdivision (a), which provides: "As used in this chapter,[5] 'child welfare services' means public social services which are directed toward the accomplishment of *any or all the following purposes*: protecting and promoting the welfare of all children, including handicapped, homeless, dependent, or neglected children; preventing or remedying, or assisting in the solution of problems which may result

---

[5] The "chapter" in question, (ch. 5 of pt. 4 of div. 9 of the Welf. & Inst. Code, § 16500 et seq.) is entitled "State Child Welfare Services." The chapter establishes the mandate for a "public system of statewide child welfare services" (§ 16500), and sets forth the goals of the various types of services to be provided.

in, the neglect, abuse, exploitation, or delinquency of children; preventing the unnecessary separation of children from their families by identifying family problems, assisting families in resolving their problems, and preventing breakup of the family where the prevention of child removal is desirable and possible; *restoring to their families children who have been removed, by the provision of services to the child and the families*; identifying children to be placed in suitable adoptive homes, in cases where restoration to the biological family is not possible or appropriate; and assuring adequate care of children away from their homes, in cases where the child cannot be returned home or cannot be placed for adoption. [¶] 'Child welfare services' also means services provided on behalf of children alleged to be the victims of child abuse, neglect, or exploitation. *The child welfare services provided on behalf of each child represent a continuum of services*, including emergency response services, family preservation services, family maintenance services, *family reunification services*, and permanent placement services. The individual child's case plan is the guiding principle in the provision of these services. The case plan shall be developed within 30 days of the initial removal of the child or of the in-person response required under subdivision (f) of Section 16501 if the child has not been removed from his or her home, or by the date of the jurisdictional hearing pursuant to Section 356, whichever comes first." (Italics added.)

And the portion of child welfare services referred to as "family reunification services" portion is, in turn, specifically defined in subdivision (h) of section 16501, which provides: "As used in this chapter,[6] family reunification services are activities designed to provide time-limited foster care services to prevent or remedy neglect, abuse, or exploitation, *when the child cannot safely remain at home, and needs temporary foster care*, while services are provided to reunite the family." (Italics added.)

██   As these statutory descriptions make clear, when a child, such as A., is not removed from her custodial parent(s) in the context of the dependency proceeding, no "reunification" services are called for. Instead, as stated in section 362, the court in that situation is vested with discretion to make "any and all reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out the provisions of this section . . . . The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." (§ 362, subd. (c).)

---

[6] See footnote 5, *ante.*

■ B.L. has made no claim in this appeal that the services offered to him—described as a "family enhancement plan," were not reasonable, or designed to eliminate the conditions that led to the finding that A. should be adjudicated a dependent. Consequently, we conclude he has failed to demonstrate any error in the court's dispositional order.[7]

The order is affirmed.

O'Leary, J., and Aronson, J., concurred.

---

[7] B.L.'s contention the characterization of his services as "enhancement" services somehow deprives him of "important due process protections associated with reunification services" is misplaced. The "important" protections he cites are all inextricably connected to the facts that (1) in cases where reunification services are provided, the parent has been deprived of custody as a result of the dependency case; and (2) if the parent is unable to achieve reunification within the strict statutory time limitations, parental rights may be terminated altogether. Those considerations do not pertain here.