Filed 11/21/13  In re J.O. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re J.O. et al, Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E057541 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1200989) |
| v. | OPINION |
| E.O., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni,

Judge.  Affirmed as modified.

Merrill Lee Toole, under appointment by the Court of Appeal, for Defendant and

Appellant.

Pamela J. Walls, County Counsel, Julie Koons Jarvi, Deputy County Counsel, for

Plaintiff and Respondent.

1

E.O. (father) is the presumed father of Jan. O. and Jay. O. (the children). On appeal, father contends that the juvenile court erred in declaring the children a sibling group at the disposition hearing, and in issuing a restraining order since there was no evidence that he had harmed the children. We agree that the court erred in declaring the children a sibling group. Otherwise, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On September 25, 2012, the Riverside County Department of Public Social Services (the department) filed a Welfare and Institutions Code[1] section 300 petition on behalf of the children. Jan. O. was three years old at the time, and Jay. O. was 16 months old. The petition alleged that the children came within the provisions of section 300, subdivision (b) (failure to protect). Specifically, the petition alleged that father and the children's mother (mother)[2] engaged in acts of domestic violence while in the presence of the children. The petition further alleged that mother failed to protect the children from father, and that father suffered from mental health issues and failed to seek appropriate treatment.

*Detention*

The social worker filed a detention report stating a referral was received that alleged father, who was mother's boyfriend and the children's father, had been assaulting

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise noted.

[2] Mother is not a party to this appeal.

2

mother. The referral also stated that father had been physically abusive to the children in the home, and that the children could be heard yelling and screaming from outside the residence. A second referral was received stating that mother continued to be involved with father, that mother left the children with him unsupervised, and that father stalked mother and continued to intimidate her.

The social worker went to mother's home and spoke with mother's roommate. The roommate said she had witnessed father lose his temper and yell and scream at mother and the children. Mother was not at home, so the social worker went to the maternal grandmother's home to find her. The maternal grandmother began talking to the social worker about father and said that he was mean, and he had been stalking her daughter. When mother arrived at the home, she spoke with the social worker and said that father had hit her on many occasions, inflicted "busted lips," and had pulled her hair. She said that "these things happen[ed] in front of the children." Mother said father always threatened her and she was afraid of him, but she was no longer with him. Mother admitted that she would sometimes leave the children with him, since her babysitter was unreliable. She also informed the social worker that she was awarded full custody of the children at a recent family law court hearing.

A deputy and the social worker accompanied mother to the paternal grandmother's house to get the children. Father was there, so the social worker introduced herself to him and said she wanted to speak with him about the allegations. Father instantly became belligerent, used profanity, and took an aggressive posture. He declared that

everything was fine between him and mother. He admitted that he had hit her and left marks and bruises, but said he had not done so "in a long time." He said that after he gets help, they will be back together. The social worker reported that father had some mental health issues and received SSI disability benefits.

On September 26, 2012, the court found father to be the presumed father of the children. The court detained the children from him, but ordered them to remain in mother's custody. The court issued a temporary restraining order, prohibiting father from any contact with mother and the children. The order was to expire on October 22, 2012.

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report, recommending that father be provided with reunification services, and mother be provided with family maintenance services. The social worker stated that mother and father had a three-year pattern of domestic violence. The social worker was very concerned about the safety of the children, since both parents reported that the children had witnessed numerous incidents of domestic violence.

On October 2, 2012, October 8, 2012, and October 18, 2012, father was arrested for violating the terms of the restraining order. He violated the order on other occasions, but the police were unable to locate him after those incidents. Father was incarcerated and was "not expected to be released within the next month due to the numerous times he [had] violated the current restraining order." On October 22, 2012, the court reissued the restraining order until November 5, 2012.

4

On November 5, 2012, the court held a contested jurisdiction hearing. The court found that the children came within section 300, subdivision (b), and adjudged them dependents of the court. The court ordered that physical custody of the children be retained by mother, subject to the department's supervision. The court ordered her to participate in family maintenance services. The court ordered that physical custody of the children be removed from father, and ordered him to participate in reunification services. The court declared the children to be a sibling group and informed father that he had six months to complete his services and reunify with the children. The court stated that he if failed to do so, the matter could be set for a section 366.26 hearing. The court also issued a permanent restraining order, prohibiting father from contacting mother and the children in any way, except for court-ordered visitation. The court ordered the restraining order to be in effect for three years.

## ANALYSIS

### I. The Court Erred in Declaring the Children a Sibling Group

Father argues that the court erred in declaring the children a sibling group under section 361.5, subdivision (a)(1)(C), thereby limiting him to six months of reunification services. He contends that section 361.5, subdivision (a)(1)(C), did not apply since the court placed the children in mother's custody with family maintenance services under section 364. Thus, he argues that the court's order declaring the children a sibling group and limiting his services to six months should be reversed. We agree.

5

Section 361.5, subdivision (a), currently provides that unless certain exceptions apply, "whenever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians." "Child welfare services" include both reunification and maintenance services. (*In re Pedro Z.* (2010) 190 Cal.App.4th 12, 19 (*Pedro Z.*).)

Section 361.5, subdivision (a)(1), "contains time limits on the provision of family reunification services. For a child three years of age and older and not part of a sibling group, 'court-ordered services shall be provided beginning with the dispositional hearing and ending 12 months after the date the child entered foster care as defined in Section 361.49, unless the child is returned to the home of the parent or guardian.' [Citation.]" (*Pedro Z.*, *supra*, 190 Cal.App.4th at p. 19.) The presumptive rule for children under the age of three is that "court-ordered services shall not exceed a period of six months from the date the child entered foster care." (Former § 361.5, subd. (a)(1)(B); see *In re A.C.* (2008) 169 Cal.App.4th 636, 642 (*A.C.*).) "The court may combine a 'sibling group' that includes at least one child less than three years old at the time of his or her initial removal. In such cases, the court applies the shortened six-month 'child welfare services' presumption to all members of the 'sibling group.' [Citation.]" (*A.C.*, *supra*, 169 Cal.App.4th at p. 642; § 361.5, subd. (a)(1)(C).)

When a child is adjudged a dependent but is placed in the custody of a parent, the applicable statutory provision is section 362, subdivision (c), which provides: "If a child

6

is adjudged a dependent child of the court, on the ground that the child is a person described by Section 300, and the court orders that a parent or guardian shall retain custody of the child subject to the supervision of the social worker, the parents or guardians shall be required to participate in child welfare services or services provided by an appropriate agency designated by the court."[3]  The services referred to in section 362 are *not* reunification services, but family maintenance services, which are provided "in order to maintain the child in his or her own home."  (§ 16506; see also *Pedro Z.*, *supra*, 190 Cal.App.4th at pp. 19-20.)  "[W]hen the child remains in a parent's home, the court reviews the status of the case every six months under section 364; under such review, the court is not concerned with reunification, but in determining 'whether the dependency should be terminated or whether further supervision is necessary.'  [Citations.]  This is so because the focus of dependency proceedings 'is to reunify the child with *a parent*, when safe to do so for the child.  [Citations.]'  [Citation.]  The goal of dependency proceedings—to reunify a child with at least one parent—has been met when, at disposition, a child is placed with a former custodial parent and afforded family maintenance services."  (*Pedro Z.*, *supra*, 190 Cal.App.4th at p. 20.)

---

[3]  At the time the court ordered services in the instant case, this paragraph was designated as subdivision (b).  The language in subdivision (c) now is virtually the same. (See *Pedro Z.*, *supra*, 190 Cal.App.4th at pp. 19-20.)

In the instant case, the applicable statutory provision was section 362, not section 361.5. The children were in mother's custody prior to the dependency proceeding.[4] The court retained them in mother's physical custody and ordered her to participate in family maintenance services. The court removed the children from father's custody and ordered reunification services to be provided to him for a period of six months. We note that the court apparently erred in ordering reunification services, since the children were not placed in out-of-home care or in the custody of a former noncustodial parent. (*Pedro Z.*, *supra*, 190 Cal.App.4th at p. 20.) Because parental custody of the children was not disrupted by the dispositional order, and the children were not placed in foster care, there was no current need to "reunify" the family. (*In re A.L.* (2010) 188 Cal.App.4th 138, 140 (*A.L.*).) Instead, the goal of this dependency proceeding was simply to "eliminat[e] the conditions or factors requiring court supervision." (§ 364, subd. (b).) Consequently, the court had discretion to "direct any reasonable orders to the parents . . . as the court deem[ed] necessary and proper to carry out" the provisions of section 362. (§ 362, subd. (d); see also *A.L.*, *supra*, 188 Cal.App.4th at pp. 140-141.) "For their part, the parents were 'required to participate in child welfare services or services provided by an appropriate agency designated by the court.' [Citation.]" (*A.L.*, at p. 141; see also § 362, subd. (c).)

---

[4] According to mother, she had a family law court order awarding her full custody.

Since the children have remained in the custody of a parent, section 361.5 plays no role. (*A.C.*, *supra*, 169 Cal.App.4th at p. 650.) The language of section 361.5 "contemplates that the period for mandatory reunification services begins at the time of disposition and continues while the child is in foster care or until the child is returned to the home of the parent." (*Pedro Z.*, *supra*, 190 Cal.App.4th at p. 19; see also, *A.L.*, *supra*, 188 Cal.App.4th at p. 145.) Since the children never entered foster care, the time limits for reunification services set forth in section 361.5 did not apply here. (*A.C.*, at p. 650; *Pedro Z.*, at p. 21.) Accordingly, we agree with father that the court's order declaring the children a sibling group pursuant to section 361.5, subdivision (a)(1)(C), and thereby limiting his reunification to six months, "was unnecessary and erroneous." Thus, we will direct the juvenile court to vacate that portion of its order.

## II.  The Court Properly Issued a Restraining Order

Father argues that the court erred in issuing the restraining order with regard to the children, since there was no evidence that he had harmed them. He contends that no restraining order was needed, in that there was no basis to infer that he was a threat to them since he was incarcerated. He further asserts that the restraining order "acted to limit his visitation with the children." We disagree.

"[W]e view the evidence in a light most favorable to the respondent, and indulge all legitimate and reasonable inferences to uphold the juvenile court's determination. If there is substantial evidence supporting the order, the court's issuance of the restraining

9

order may not be disturbed.  [Citation.]" (*In re Cassandra B.* (2004) 125 Cal.App.4th 199, 210-211.)

Section 213.5 permits the juvenile court to issue an order "enjoining any person" from "contacting, either directly or indirectly, by mail or otherwise," a dependent child in cases related to domestic violence.  (§ 213.5, subd. (a).)

Here, the court issued a restraining order prohibiting father from having contact with mother or the children "directly or indirectly in person, by mail or otherwise, except for court-ordered visitation."  There was substantial evidence to support the issuance of the restraining order.  There was evidence of domestic violence in the home that created a safety concern for the children and posed a danger of serious physical and/or emotional harm to them.  The evidence indicated that father had little ability to control himself and tended to resort to violence in that he hit mother, "busted her lip," pulled her hair, and had given her bruises, all in front of the children.  Defendant threw things at mother, stalked her, and even climbed through a window to get into her house.  Although father complains that there was no need for the restraining order since he was incarcerated, the record did not indicate how long he would be incarcerated.  At the time of the disposition hearing, he was in county jail due to his arrest for violating the court's previous restraining order.  The social worker simply reported that he was in jail and was "not expected to be released within the next month."  However, the restraining order was necessary to protect the children from him whenever he was to be released.

10

Furthermore, father's claim that the restraining order "acted to limit his visitation" is unsupported by the record. The court ordered that father should have supervised visitation, to be arranged by the social worker. He was scheduled to begin having supervised visits two times per week. At the disposition hearing, the court ordered father not to contact mother or the children "by mail or otherwise, *except* for court-ordered visitation of your children, and there will be an exception for visitation." (Italics added.) The restraining order did not limit father's visitation in any way.

## DISPOSITION

The juvenile court is directed to vacate the portion of the disposition order declaring the children to be a sibling group and thereby limiting father's services to six months. Otherwise, the order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
                Acting P. J.


We concur:


KING
                J.


MILLER
                J.

11