Filed 2/26/14  In re Miguel G. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re MIGUEL G., a Person Coming Under the Juvenile Court Law. | B248578 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>P. G.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK97254) |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite Downing, Judge.  Affirmed.

Grace Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

Father P.G. argues the dependency court erred by failing to set a status review hearing under Welfare and Institutions Code section 366.21, subdivision (e)[1] because it ordered reunification services for him. Respondent Department of Children and Family Services (the department) contends that the court ordered enhancement services for father rather than reunification services and therefore did not err in setting a future status review hearing pursuant to section 364. We agree with the department and find no error.

**FACTUAL AND PROCEDURAL SUMMARY**

Father and mother, Martina V., have a child, Miguel, born in 2006. Mother has an older child, Eduardo, born in 1995. They shared a home with other family members. In early January 2013, an immediate response referral was received by the department, stating that father had knives and was trying to hurt himself with them, and that he had a history of suicide attempts. The previous week, father had put Miguel over his shoulder and held a knife to his back. Father was talking to himself and to an imaginary friend, not sleeping, and abusing both crystal methamphetamine and alcohol. Mother confirmed these facts. In the most recent incident, father grabbed two knives and warned the family to '"be prepared."' A niece telephoned police because of this threat. The family locked themselves inside a bedroom while father attempted to break in. Mother reported that father had been hospitalized previously for mental illness and narcotics intoxication. Father's symptoms had begun about a year before when he was laid off and became depressed. He was extremely jealous. Police officers and the department responded to the house. Mother left the home immediately, with the children, and obtained a restraining order against father. The family had no prior history with the department.

Miguel told the social worker that he believed his father was going to cut his neck when father held him over his shoulder. He cried when describing his father's behavior and said he felt scared. Eduardo also said he was afraid of his stepfather, who had been hospitalized for a drug overdose and had attempted suicide. He described the incident in

---

[1] Statutory references are to the Welfare and Institutions Code.

2

which the family locked themselves in the bedroom away from father, who was armed with knives and attempting to break into the room. Eduardo described father's drinking habits.

Father was placed on a psychiatric hold. The psychiatric evaluation stated that he was paranoid, delusional and disconnected from reality. He was diagnosed with psychosis, not otherwise specified. The evaluator suggested that chronic paranoid schizophrenia and amphetamine and amphetamine-induced psychoses should be ruled out. Father was prescribed medications and was held for 72 hours. Father denied having knives, or harboring suicidal or homicidal ideation. Father admitted to abusing alcohol almost every day, as well as methamphetamine, but denied a substance abuse problem.

The department filed a petition alleging that Eduardo and Miguel came within the jurisdiction of the court under section 300, subdivisions (a) and (b) because of father's history of violent altercations in the presence of the children, substance abuse, and mental and emotional problems, all of which endangered the children. In the detention report, the department stated that it had found the children at a high risk of future abuse or neglect because of father's mental condition. The children were placed with mother, living apart from father. The department recommended that the children receive developmental, medical, and mental health evaluations. Father, who remained in a mental health facility, was not to have visits with the children until he had contacted the department and had been assessed. The court ordered mental health and developmental assessment of the children, and any necessary treatment. Father was to have monitored visits in a therapeutic setting. The matter was continued for a pretrial resolution conference.

In the jurisdiction/disposition report, Eduardo described father talking to an imaginary friend. Father accused mother of cheating on him, and said he had cameras. Both children again described the incident in which father picked up Miguel while holding a knife. Mother said father had sworn to her that he only used drugs once. She took him to drug and alcohol classes. Father repeatedly told her to prepare herself, but refused to explain why.

3

On January 16, 2013, father attended a team decision meeting at a department office. Father left in the middle of the session, saying he did not want to continue if the department was unable to arrange a visit for him with Miguel. Father was to participate in individual therapy, take his medications, and see a psychiatrist regularly. It was recommended that he complete a dual diagnosis substance abuse program to include mental health services. Father was referred for random drug testing.

A team decision meeting for mother was held the same day. A safety plan was agreed upon under which the department would continue the petition to detain Miguel from father. The recommendation was for the children to remain in mother's care with family maintenance services for mother with the children. It was recommended that father receive family reunification services as to Miguel. Mother was to participate in individual therapy. The family was to be referred to a family preservation program.

About a week later, father submitted to an interview at the department. He denied any psychiatric conditions or suicidal ideation. He admitted using crystal methamphetamine, saying his last use was December 30, 2012. He denied threatening anyone with a knife. Father was not taking his psychiatric medications. He was leaving each social worker 10 to 15 messages a week at odd hours of the day or on the weekend. Father's messages were that family members were going to come to the department office to live scan or to provide additional information for the investigation. Prior to the adjudication hearing, father enrolled in counseling for parent education, anger management and substance abuse.

The children felt safe living with mother at the home of an adult sister. Father was not allowed to visit Miguel prior to the adjudication hearing because the child's mental health provider did not recommend contact.

At the adjudication and disposition hearing on March 26, 2013, the court struck all references to mother in the section 300 petition and proceeded as to the allegations regarding father. The court sustained the petition, as amended to state that father had engaged in violent behavior, abused methamphetamine, and had mental health issues. The children were declared dependents and were allowed to remain in mother's custody

4

under the supervision of the department with family maintenance services. The children were referred for assessment for individual counseling to address case issues. Mother was to join a support group for partners of persons with substance abuse and mental health issues.

The court ordered family enhancement services for father. He was to enroll in and complete a full drug treatment program with random testing and aftercare, parenting, and mental health counseling. He was to have a psychological or psychiatric evaluation, and take prescribed psychotropic medications. Father was ordered to participate in individual counseling to address case issues, including mental health, substance abuse, and anger management. The boys were to have conjoint counseling, and if recommended by their therapist, with father. Father was granted monitored visits with Miguel in a therapeutic setting. Eduardo was given discretion to have visits with father. The court set a review hearing pursuant to section 364 for October 2013.

Father filed a timely appeal from the order made at the jurisdiction and disposition hearing.

**DISCUSSION**

I

Father contends that since the children were detained from his custody and released to mother, and because services designed to reunify him with the children were ordered, the court should have scheduled a review hearing pursuant to section 366.21, subdivision (e) rather than a status review hearing pursuant to section 364. This argument is premised on the characterization of the services ordered for father as "reunification" services rather than "enhancement" services. Father argues the services ordered for him "appear identical in every way to 'reunification services.'"

Father suggests: "Perhaps the court chose an alternative name to 'reunification services' because it was not required to offer services to Father at all, since the children were placed at home with Mother. (See § 361.5.) Regardless, because the court detained the children from Father and chose to offer him services, presumably with the goal of

5

reunification, it was legally required to schedule a hearing pursuant to section 366.21, subdivision (e), as to Father, to determine if and when the children could be returned to Father's custody." He finds support for his characterization of the ordered services in the department's recommendation that he receive reunification services. He contends that he had begun exhibiting mental instability only in the last year of the eight years he had lived with mother, and therefore could regain his mental health and reunify with the children with the aid of services. Father speculates that the "court would make orders to support this arrangement." He argues that although the children were placed with mother, the court "appeared to opt for a reunification plan for Father." Based on that contention, he asserts that the trial court was required to set a hearing under section 366.21, subdivision (e) to determine whether those services should be continued or terminated.

When a child is adjudged a dependent but is placed in the custody of a parent subject to the supervision of a social worker, section 362, subdivision (b) applies. It provides for provision of family maintenance services rather than reunification services. (*In re Pedro Z.* (2010) 190 Cal.App.4th 12, 19–20 (*Pedro Z.*).) Under these circumstances, the court reviews the status of the case every six months under section 364. (*Id*. at p. 20.) At such a review, "the court is not concerned with reunification, but in determining 'whether the dependency should be terminated or whether further supervision is necessary.' [Citations.] This is so because the focus of dependency proceedings 'is to reunify the child with *a parent*, when safe to do so for the child. [Citations.]' [Citation.] The goal of dependency proceedings—to reunify a child with at least one parent—has been met when, at disposition, a child is placed with a former custodial parent and afforded family maintenance services." (*Ibid.*) In *Pedro Z.*, the children were removed from the custody of father and ordered returned to mother's home at the disposition hearing. Father appealed an order denying him reunification services since the children were in home of mother. The Court of Appeal concluded that father was not entitled to reunification services. (*Ibid.*)

6

The transcript of the March 26, 2013 hearing clearly reflects that the court ordered enhancement, rather than reunification services, for father. "Enhancement services are child welfare services offered to the parent not retaining custody, designed to enhance the child's relationship with that parent. (See *In re A.C.* (2008) 169 Cal.App.4th 636, 642, fn. 5; see also *In re A.L.* (2010) 188 Cal.App.4th 138, 142, fn. 2.)" (*Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1497, fn. 1.) In contrast, "'[R]eunification services' are 'activities designed to provide time-limited foster care services to prevent or remedy neglect, abuse, or exploitation, when the child cannot safely remain at home, and *needs temporary foster care,* while services are provided to reunite the family.'" (*In re A.C.*, *supra*, 169 Cal.App.4th at p. 643, quoting Welf. & Inst. Code, § 16501, subd. (h), italics added.)

Since the children were not removed from mother's custody and remained placed with her, the court did not err in ordering enhancement services for father and setting a status review hearing under section 364.

The department argues that father's appeal should be dismissed because any decision about reunifying father with the family was not scheduled to be made until the review hearing set for October 1, 2013. We decline to dismiss the appeal. The issue of the proper vehicle for review of the case became ripe when the court made its March 26, 2013 order.

## DISPOSITION

The March 26, 2013 order of the court is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                        EPSTEIN, P. J.

We concur:


        WILLHITE, J.                        MANELLA, J.

7