Filed 6/11/21  In re J.C. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.C., et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E076413 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J286241 & J286242) |
| v. | OPINION |
| P.B., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, and Pamela J. Walls, Special Counsel, for Plaintiff and Respondent.

1

INTRODUCTION

Defendant and appellant P.B. (father) challenges the juvenile court's order denying him reunification services. He contends the court erred in denying him services without relying on a bypass provision under Welfare and Institutions Code[1] section 361.5. Father additionally contends that, even if the bypass provisions of section 361.5 do apply, the juvenile court abused its discretion in otherwise denying him discretionary reunification services as such services were in the best interests of the children. We affirm.

PROCEDURAL BACKGROUND

On August 11, 2020, the San Bernardino County Children and Family Services (CFS) filed a section 300 petition on behalf of J.C. and A.C. (the children).[2] J.C. was 10 years old at the time, and A.C. was 13 years old. The petition alleged that the children came within section 300, subdivisions (b) (failure to protect) and (c) (serious emotional damage). Specifically, the petition alleged that father and the children's mother, Y.C. (mother),[3] engaged in domestic violence in the presence of the children, father had a history of substance abuse, mother knew or reasonably should have known that he had a problem with substance abuse, and father would threaten to harm himself in front of the children.

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise noted.

[2] CFS filed separate petitions on behalf of each child. However, since they contain the same allegations, we will refer to them as a single petition.

[3] Mother is not a party to this appeal.

2

In a detention report, the social worker stated that CFS received a referral from A.C. alleging that father "gets drunk . . . yells at me and . . . later gives me money." The social worker contacted mother and found out that she and father (the parents) lived together with the children, but she was currently staying at a maternal aunt's home following an altercation with father. Father was drunk, began yelling at A.C. and mother, and then grabbed mother by the hair and pulled her across the floor. He also hit her in the face. Mother told him she was tired of him treating her and the children that way, so she and the children packed up and left.

The social worker spoke with J.C. He said that he remembers his parents always physically fighting, that he felt scared, and did not like when father yelled or when he witnessed the physical altercations. J.C. said he felt safe with his mother, but not with his father.

A.C. told the social worker she had witnessed a lot of arguments and physical altercations between her parents. When father was drunk, he would hit mother, yell at her, and spit on her. She said father would get drunk every week. A.C. also said she felt safe with mother, but not with father, and that she did not want to see father.

The court held a detention hearing on August 12, 2020, and detained the children from father. It ordered they remain in mother's custody on the condition that father not reside in the home. The court ordered CFS to provide services to father, pending the development of a case plan.

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report on August 28, 2020, recommending that the children be declared dependents but remain in mother's custody under county supervision, that mother be provided with family maintenance services, and that father be provided with reunification services. The social worker interviewed mother, who said that she had resided with father "on and off since about 2006," and that he was the father of the children. Mother reported that incidents of domestic violence occurred weekly. Father was verbally abusive with mother and the children when he was sober, and things got worse when he was intoxicated. She further said that on numerous occasions father had used profanity toward the children and threatened to kill himself. The social worker also met with the children. They confirmed the ongoing domestic violence and said father was verbally aggressive with them. Both children said they were fearful of him. They said father gave them "guilt trips" in order to get them to do what he wanted and confirmed that he had threatened to kill himself. The social worker reported that J.C. was reluctant to participate in supervised visits with father, but eventually decided to have a visit and enjoyed it. A.C. continued to refuse visiting with father.

The social worker reported that she interviewed father on August 24, 2020. He denied the allegations in the petition and did not know why the children would say he had been violent or why they would be afraid of him. He denied that he had ever engaged in domestic violence with mother.

4

The court held a jurisdiction/disposition hearing on September 2, 2020. Mother submitted on the petition. Father requested the matter to be referred to mediation, and the court continued the matter for mediation and a further jurisdiction/disposition hearing.

The court held a further hearing on October 20, 2020, and county counsel reported that an agreement was reached but noted that services to father were technically discretionary. Father set the matter for contest, and the court continued the hearing.

On November 30, 2020, the social worker filed a memorandum with additional information for the court. She reported that father was arrested on November 11, 2020, and charged with inflicting corporal injury on a spouse for the incident that occurred with mother on August 5, 2020. He was also charged with two counts of driving under the influence. He was released from incarceration on November 15, 2020, and was arrested again the next day for inflicting corporal injury on a spouse.[4] The social worker stated that father had not displayed any remorse for his actions that led to the removal of the children but blamed mother, the children, and CFS for his circumstances. The social worker opined that reunification services were no longer in the children's best interests since father had not shown benefit from the services already provided and since the children were remaining in mother's care under family maintenance. Thus, the social worker recommended that the court not order reunification services for father since he was not entitled to them and because services would not be in the best interests of the children.

---

[4] The circumstances/basis of this arrest is not clear from the record.

The court held a contested jurisdiction/disposition hearing on January 5, 2021. It sustained the petition and declared the children dependents. The court stated that its tentative decision was to follow the social worker's recommendation to not offer father reunification services but to offer mother family maintenance services. It stated that services were discretionary and invited father's counsel to make arguments as to why father should receive services. Father's counsel argued that he started services immediately after the detention hearing and had been very engaged, and he had attended all visits with the children. The court ordered family maintenance services for mother, but declined to order reunification services for father, finding that it was not in the children's best interests.

## DISCUSSION

### The Court Properly Denied Father Reunification Services

Father argues he was entitled to reunification services under section 361.5 as a matter of law unless one of the statutory exceptions applied, and the court did not find any of the exceptions to be applicable; thus, it erred in denying him services. He further contends the court abused its discretion in determining that services were not in the children's best interests claiming that his conduct was "run-of-the-mill alcohol abuse and domestic violence." We conclude the court properly denied him services.

A. *Father Was Not Entitled to Reunification Services*

" 'As a general rule, reunification services are offered to parents whose children are removed from their custody in an effort to eliminate the conditions leading to loss of custody and facilitate reunification of parent and child.' " (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1112.) "Section 361.5, subdivision (b) sets forth certain exceptions—

6

also called reunification bypass provisions—to this 'general mandate of providing reunification services.' " (*Ibid.*)

However, "when a child is adjudged a dependent but is placed in the custody of a parent subject to the supervision of a social worker, the applicable statutory provision is section 362, subdivision (b), which provides that '[w]hen a child is adjudged a dependent child of the court, on the ground that the child is a person described by Section 300 and the court orders that a parent or guardian shall retain custody of the child subject to the supervision of the social worker, the parents or guardians shall be required to participate in child welfare services or services provided by an appropriate agency designated by the court.' " (*In re Pedro Z.* (2010) 190 Cal.App.4th 12, 19-20 (*Pedro Z.*).) The services referred to in section 362, subdivision (b), are not reunification services but family maintenance services. (*Id*. at p. 20.) "Family reunification services shall only be provided when a child has been placed in out-of-home care, or is in the care of a previously noncustodial parent under the supervision of the juvenile court." (§ 16507, subd. (b).) Here, because the children were not placed in out-of-home care but were maintained in mother's custody, no reunification services were required. (*Pedro Z.*, at p. 20.) In other words, father was not entitled to reunification services.

7

B. *The Court Did Not Abuse its Discretion in Declining to Order Services*

When a child is not removed from his or her custodial parent, and no reunification services are called for, "as stated in section 362, the court in that situation is vested with discretion to make 'any and all reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out the provisions of this section.' " (*In re A.L.* (2010) 188 Cal.App.4th 138, 145.) " 'The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion.' [Citation.] The reviewing court will not reverse the court's order in the absence of a clear abuse of discretion." (*In re Gabriel L.* (2009) 172 Cal.App.4th 644, 652.)

The court did not abuse its discretion in declining to order services for father since they were not in the children's best interests. Father denied the allegations in the petition, particularly that he had ever engaged in domestic violence with mother. Yet, he was arrested on November 11, 2020, for inflicting corporal injury on a spouse for the incident involving mother on August 5, 2020. He was released from incarceration on November 15, 2020, and he was arrested again the next day for inflicting corporal injury on a spouse.

Furthermore, according to mother and the children, there was ongoing domestic violence in the home. Additionally, father was verbally abusive with the children when he was sober, and things got worse when he was intoxicated. He gave them "guilt trips" in order to get them to do what he wanted, and he threatened to kill himself. Both children said they were afraid of father and did not feel safe with him. J.C. was reluctant to

8

participate in supervised visits with him, although he eventually visited with father and enjoyed it. A.C. refused to visit with father.

Moreover, father did not display any remorse for his actions that led to the removal of the children but blamed mother, the children, and CFS. The record shows he participated in five counseling sessions after the detention hearing, and his therapist reported that he denied being physically abusive with mother. He also stated he was a loving father to his children and felt that CFS never should have gotten involved. The therapist opined that father did not make any progress in his sessions because of his lack of honesty and insight and his need to control the sessions. Father clearly did not see the need to change and did not benefit from the services.

In sum, father was not entitled to reunification services since the children remained in mother's custody. Furthermore, the record amply demonstrates that the court did not abuse its discretion in declining to order them.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


FIELDS _____
J.

We concur:

CODRINGTON _____
            Acting P. J.

SLOUGH _____
            J.

9