Filed 7/3/23  In re J.A. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.A., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>A.M.,<br><br>        Defendant and Appellant. | E080487<br><br>(Super.Ct.No. J295059)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Reversed and remanded with directions.

John P. McCurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Tiffany Lok, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant, A.M. (father), is the biological father of J.A. (the child). Father appeals from a juvenile court's visitation order, arguing the court improperly delegated authority to the San Bernardino County Children and Family Services (CFS) to decide whether or not visitation should occur. We remand the matter for clarification of the court's order for visitation.

PROCEDURAL BACKGROUND

On November 15, 2022, CFS filed a Welfare and Institutions Code[1] section 300 petition, alleging that the child came within the provisions of subdivisions (b) (failure to protect) and (g) (no provision for support). The petition included allegations that mother had a substance abuse problem, failed to provide a safe living environment for the child, and was arrested and charged with child endangerment (Pen. Code, § 273a, subd. (a)) and driving under the influence (Veh. Code, § 23152, subds. (a) & (b)). The petition also alleged that father's whereabouts were unknown.

The court held a detention hearing on November 16, 2022, and detained the child in foster care. The court inquired as to the child's biological father, and mother named father. She said she and father were never married and never lived together. He was not present at the child's birth and was not listed on the birth certificate. Mother said there was past abuse in the relationship. She also gave the name of another possible father, but he was deceased.

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report on December 1, 2022. Father returned a call from CFS and reported that he and mother were together from 2014 to 2018, but then separated, and she moved to Nevada. He admitted there was domestic violence in the relationship. He said he mostly had contact with mother during the child's first year of life via facetime, then saw the child every other month the following year, and then every week. Father said he paid for things when mother gave him receipts and "paid the child's insurance." He said the last time he saw the child was on November 9, 2022. The social worker recommended that father remain an alleged father, not entitled to reunification services.

The court held a jurisdiction/disposition hearing on December 7, 2022. CFS filed an amended petition that day, which added allegations that father and mother had a history of domestic violence, father had a substance abuse history, and he should have known mother had a substance abuse problem. The court ordered paternity testing for father and set the matter for a further hearing. The social worker subsequently recommended that the child be placed with mother on family maintenance, on the condition that she reside in the maternal grandfather's home. Further, given that reunification services were discretionary when a child is on family maintenance with another parent, the social worker recommended no reunification services for father.

The court held the continued hearing on January 11, 2023, and noted there was a positive paternity test result for father. Father's counsel requested reunification services, even though they were discretionary, to "give [father] six months to at least build a

3

relationship with the child." Mother's counsel objected to services for father, since he was not entitled to them and they were not in the child's best interest because he did not have a relationship with the child. Father's counsel then asked for a visitation order to be made, claiming father was entitled to visitation.

The court found allegations under section 300, subdivision (b), true and dismissed the allegations under subdivision (g). The court stated: "[Father] is the mere biological father, not in the best interest to offer services. Moreover, they are discretionary.· I don't even need to make that finding . . . . The child's 3 and [father] has no relationship with the child. [¶] . . . [I] also don't need a detriment finding 'cause he's not in reunification, . . ."[2] The court struck the recommended finding that visitation was detrimental to the child and placed the child on family maintenance with mother. The court then stated: "I mean, I can order visitation, at this point based on the lack of the relationship, the history of domestic violence and substance abuse, I will give authority to the Department to do supervised visits if it's in the child's best interest, for instance, if [father] does services on his own and demonstrates a change to the Department." The court set a six-month status review hearing for July 11, 2023.

---

[2] The court was apparently referring to the circumstance where reunification services are provided, in which case "it is error to deny visitation with the parent to whom the services apply unless there is sufficient evidence that visitation would be detrimental to the child." (*In re J.N.* (2006) 138 Cal.App.4th 450, 458.)

## DISCUSSION

### The Matter Should Be Remanded for Clarification

Father contends the court improperly delegated to CFS the authority and discretion to determine whether he could have visits with the child, by predicating his visitation on its determination of what would be in the child's best interest. Respondent contends that the court's order "merely set forth prerequisites and the required circumstances for visitation" and was, thus, not an improper delegation of authority. We conclude the juvenile court's order is ambiguous and the matter should be remanded for clarification.

A. *Relevant Law*

The juvenile court has the sole power to determine whether visitation will occur, and it may not delegate that power. (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008-1009.) " ' "The judicial function is to 'declare the law and define the rights of the parties under it.' [Citation.]" ' . . . and 'to make binding orders or judgments.' " (*In re Jennifer G.* (1990) 221 Cal.App.3d 752, 756 (*Jennifer G.*).) "[T]he court in the exercise of its judicial discretion should determine whether there should be any right to visitation and, if so, the frequency and length of visitation." (*Id.* at p. 757.) In other words, "[t]he juvenile court must first determine whether or not visitation should occur . . . and then provide the Department with guidelines as to the prerequisites of visitation or any limitations or required circumstances." (*In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1237, fn. omitted.) "[T]he juvenile court may delegate to the probation officer or social worker the responsibility to manage the details of visitation, including time, place and manner thereof." (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374 (*Moriah T.*).)

B.  *The Court Appears to Have Delegated its Authority to CFS*

Father argues the court improperly delegated to CFS complete discretion to determine whether or not visitation should occur.  He asks us to reverse the visitation order and remand the matter for the court "to issue an order adequately defining [his] visitation rights."  We first observe that father was not entitled to reunification services, including visitation, since he is merely a biological father.  " 'California dependency law distinguishes between a presumed father, a biological father and a biological father who came forward early in the dependency case and displayed a full commitment to the child (*Kelsey S.* father).' "  (*In re T.G.* (2013) 215 Cal.App.4th 1, 5.)  "[T]he presumed father is generally entitled to reunification services, but a mere biological father only has the possibility of services if the juvenile court makes the appropriate determination.  This distinction reflects a policy determination that it is generally in the best interests of the child to be reunited with his or her presumed father, but not necessarily with a mere biological father.  As to a biological father, the issue is left to the discretion of the juvenile court and its determination of the benefit to the child of providing services." (*Francisco G. v. Superior* Court (2001) 91 Cal.App.4th 586, 597 (*Francisco G.*); see § 361.5, subd. (a); see also *In re Zacharia D.* (1993) 6 Cal.4th 435, 451 (*Zacharia D.*).)  Visitation is a component of reunification services.  (§ 362.1, subd. (a)(1)(A).)

Here, it is undisputed that father was a mere biological father.  Thus, he was not entitled to visitation as a matter of right.  (*Zacharia D.*, *supra*, 6 Cal.4th at p. 451; § 362.1, subd. (a)(1)(A); see *In re Korbin Z* (2016) 3 Cal.App.5th 511, 518 ["because he was not entitled to reunification services, he had no right to visitation"].)  "[T]he issue

6

[was] left to the discretion of the juvenile court and its determination of the benefit to the child of providing services." (*Francisco G.*, *supra*, 91 Cal.App.4th at p. 597.) The court stated: "[Father] is the mere biological father, not in the best interest to offer services. Moreover, they are discretionary." Thus, the court recognized its discretion and found that it was not in the child's best interest to offer services. It then placed the child in mother's custody on family maintenance.[3]

However, the court then stated: "I mean, I can order visitation, at this point based on the lack of the relationship, the history of domestic violence and substance abuse, I will give authority to the Department to do supervised visits if it's in the child's best interest, for instance, if [father] does services on his own and demonstrates a change to the Department." This visitation order is problematic since the court just found that services were not in the child's best interest. The court then says it can order visitation; however, the order articulated does not clearly provide father with visitation. The order gives CFS the authority to provide supervised visits if it is in the child's best interest. However, this is an improper delegation of authority since the order appears to allow CFS to determine if and when visits are in the child's best interest. At best, the order is ambiguous as to whether the determination of the child's best interest is left to CFS's discretion or the court's discretion. Respondent argues the court found that visits would not be in the child's best interest until father "engaged in services and demonstrated

---

[3] We also note that, when a child "is not removed from her custodial parent(s) in the context of the dependency proceeding, no 'reunification' services are called for." (*In re A.L.* (2010) 188 Cal.App.4th 138, 145; see § 362, subd. (c).)

7

insight from such services," and the court's order as to CFS's role "amounted to a management of the details and not an improper delegation of authority." However, the order did not specify any details for CFS to manage, such as the frequency and duration of the visits. (*Jennifer G.*, *supra*, 221 Cal.App.3d at p. 757; see *Moriah T.*, *supra*, 23 Cal.App.4th at p. 1374 [the court may delegate to the social worker "the responsibility to manage the details of visitation, including time, place and manner thereof"].)

Because the juvenile court has the sole power to define the right to visitation, we find the order "improper and inadequate in that [it] determine[s] neither whether [father has] a right to visitation nor, assuming that such a right was intended, the frequency and length of visitation." (*Jennifer G.*, *supra*, 221 Cal.App.3d at p. 757, fn. omitted.) Therefore, we remand the matter for the court to clarify the visitation order. (*In re Kyle E.* (2010) 185 Cal.App.4th 1130, 1136 (*Kyle E.*) ["Given the lack of necessary detail in the oral pronouncement and the improper delegation of authority to the Department regarding whether visitation would occur at all . . . we must remand for further proceedings at which the juvenile court shall clarify the terms and conditions applicable to appellant's visitation, including, but not limited to, a minimum number of visits or that visitation is to occur regularly."].)[4]

---

[4] We note the visitation provision set forth in the written order is inconsistent with the oral pronouncement. The court's minute order following the hearing sets forth the visitation order as follows: "There will be no visitation between the child and father; CFS has authority to facilitate supervised visits if it's in the child's best interest. Visitation between the child and father is detrimental to the child's physical and emotional well-being." However, the social worker recommended the court find that visitation was harmful to the child's safety and/or emotional well-being, and the court

*[footnote continued on next page]*

## DISPOSITION

The visitation order is reversed, and the matter is remanded to the juvenile court for clarification of its order for visitation between father and the child, including whether father has a right to visitation and, assuming such right was intended, the frequency and length of visitation. In all other respects, the court's jurisdictional findings and dispositional order are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
_____
J.

We concur:

McKINSTER
_____
Acting P. J.

MILLER
_____
J.

---

specifically stated it did not need to make a detriment finding; thus, it struck that finding. Since we are remanding the matter for the court to issue a clarification of its visitation order, the clerical error should be corrected at that time. (See *Kyle E.*, *supra*, 185 Cal.App.4th at p. 1136.)