Filed 8/1/14  In re J.S. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re J.S. et al., Persons Coming Under the Juvenile Court Law. | B252623 (Los Angeles County Super. Ct. No. DK00511) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> C.G., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed in part and reversed in part.

Frank H. Free, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

C.G. (mother) appeals the juvenile court's jurisdiction and disposition orders, contending substantial evidence did not support declaring her two daughters dependents pursuant to Welfare and Institutions Code section 300, subdivision (b)[1] and removing them from her custody pursuant to section 361, subdivision (c).  We agree and reverse the jurisdiction order as it relates to mother's conduct, vacate the disposition order removing the children from her custody, and remand for the juvenile court to issue a new disposition order consistent with this opinion, and otherwise affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mother has two daughters, and at the time of the August 2013 petition, they were five and three years old.  On July 30, 2013, the Los Angeles County Department of Children and Family Services (DCFS) received a referral from an unidentified caller claiming mother had been smoking marijuana and drinking when the maternal grandmother would leave the house; mother had her youngest child hanging on her leg while she would get "high"; mother left her children home alone in order to go out looking for marijuana; and mother claimed to have a medical marijuana card.

DCFS commenced an investigation, but aside from the medical marijuana card, the caller's claims were unsubstantiated.  Mother produced a valid medical marijuana card, although she did not provide information on her medical condition necessitating marijuana use or on the length of time she had been using it.  She stated she only smoked marijuana once or twice a week outside her home and never when she was with her daughters.  When she was out, the maternal grandmother and great-grandmother would take care of the children.  Mother was willing to drug test on demand.  Not surprisingly, the drug test mother took shortly after the referral came back positive for marijuana.  But it also came back positive for cocaine, and when mother was asked about the test, she initially responded she did not understand why it would have been positive for cocaine.  She then admitted she had gone out with her friends for her birthday and ingested

---

[1]     All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

2

cocaine. She said it was a "mistake" and she had done it only once. The social worker nevertheless believed her "levels [were] high and her drug use has placed her daughters at risk." The social worker and DCFS also believed mother was minimizing her drug issues.

Separate from her alleged drug use, in the course of the investigation mother revealed two domestic violence incidents between her and the children's father Alfonso S. (father). The first incident occurred in September 2012 when father became upset, was yelling, and broke their television. The children were home in the bedroom where the argument took place. Mother did not call law enforcement, but asked father to move out, which he did. He had not lived with them since that time. The second incident occurred on January 18, 2013, when father showed up at the home intoxicated and upset. He hit mother on the head with a closed fist three times. Mother called the police and had him arrested. She also obtained a temporary restraining order against him that protected both her and the children, although she ultimately did not obtain a permanent order. The children were not home during that incident. Mother reported that father "never listened" to her and continued to have contact with the children after these incidents, but the parties stipulated the only interaction mother and father had since January 2013 was over the phone when he would call to inquire about the children.

Mother's older daughter[2] reported at the time of the DCFS's initial contact she had not seen mother smoke cigarettes. She also did not see father and he did not live in their home. She later told the social worker she saw her father when he picked her up from school and dropped her off with the maternal grandmother. She said father did not live with them, but he would visit her at the maternal grandmother's house. She said mother and father "fight a little bit. My dad went to jail [and] my dad gets mad at mom everyday. He doesn't like girls." She was unable to provide any information as to the frequency of incidents, dates of last incidents, or other details. She also was unable to

---

**2**      Both daughters' initials are J.S., so we refer to them as older daughter and younger daughter for convenience.

provide any information as to the use of illegal substances by mother or father and could not identify any illegal substances.

The maternal grandmother knew mother had a marijuana card and smoked marijuana, but she said mother did not do it in the home or around the children. Instead, she did it outside, sitting in her car for about three hours before coming back inside. The maternal grandmother was otherwise unable to provide any information on mother's past, recent, or ongoing substance use. As for the incidents between mother and father, the maternal grandmother stated they would engage in verbal altercations regularly, and in September 2012 these conflicts escalated when father broke the television while the children were asleep in the bedroom. Later, she said the children "saw and heard everything." She intervened and told mother and father their relationship was not working out and he should leave the home, which he did. After that, he would pass by their home intoxicated but he never tried to come inside. The January 2013 altercation occurred outside, and although the maternal grandmother did not see father hit mother, she saw him arrested. Mother thereafter obtained the restraining order. At the time of her initial interview, the maternal grandmother reported father started coming around the home, picking up and dropping off the children, but not coming into the house. She believed mother maintained contact with father. Neither mother nor father had ever been abusive to the children.

DCFS noted the children had no visible marks or bruises and both appeared well adjusted and on track developmentally.

Following the August 2013 referral and investigation, DCFS took the children into protective custody with mother's consent, although mother indicated she would "'do anything to get [her] children back[.] I made a mistake. I will never do it again." DCFS filed a section 300 petition alleging as relevant here two grounds for jurisdiction.[3] For count b-1, the petition alleged mother "has a history of substance abuse, and is a current

---

[3]     The domestic violence incident was also alleged as part of a count pursuant to section 300, subdivision (a), but that count was stricken.

4

abuser of cocaine and marijuana, which renders the mother incapable of providing regular care for the children.  On 08/08/2013, the mother had a positive toxicology screen for cocaine and marijuana.  On 08/08/2013, and on prior occasions, the mother was under the influence of cocaine and marijuana while the children were in the mother's care and supervision.  The mother's substance abuse endangers the children's physical health and safety and places the children at risk of physical harm and damage."  For count b-2, the petition alleged mother and father "engaged in a violent altercation in which the father repeatedly struck the mother's head with the father's fists.  In September 2012, the father broke a television during a verbal altercation with the mother, in the presence of the children.  The mother failed to protect the children in that she allowed the father to frequent the children's home and have unlimited access to the children.  Such violent conduct on the part of the father against the mother endangers the children's physical health and safety and place[d] the children at risk of physical harm, damage and danger."

On August 19, 2013, the juvenile court ordered the children detained and set a date for the jurisdiction/disposition hearing.  It ordered DCFS to set up random weekly and on demand drug testing and provide mother with referrals for drug, alcohol and domestic violence programs.  It also granted mother unmonitored visitation at the maternal grandmother's home so long as mother remained enrolled in a program, tested clean, and the maternal grandmother was present.  DCFS had discretion to allow mother to reside with the maternal grandmother.  Father was given monitored visitation.

Prior to the jurisdiction/disposition hearing, DCFS discovered father had been arrested and the probation officer assigned to his case indicated he appeared to have accepted a plea deal for three years in prison.  The probation officer believed he would not be released.

In its jurisdiction/disposition report, DCFS noted mother was "cooperative . . . in locating therapeutic services" and she was willing to do what was necessary to protect her children from further abuse.  The DCFS expressed "excessive concern" about the domestic violence because mother continued to minimize the incidents.  For example, mother had initially said the children were not present at the September 2012 incident,

5

but later reported they were in the same bedroom where father broke the television. Further, although mother had father arrested and obtained a restraining order after the January 2013 incident, she allowed father "unlimited access to the children," including when he transported the older daughter to and from school regularly. With regard to mother's marijuana use, although she had a medical marijuana card, she refused to provide information on her medical need, or on the frequency or length of time she has been consuming marijuana, leading DCFS to believe she was minimizing her positive feelings about marijuana and cocaine. DCFS concluded the parents had an "ongoing issue as it relates to domestic violence" and mother had a "current issue as related to substance use."

DCFS's jurisdiction/disposition report also noted that, prior to the referral in this case mother had enrolled in domestic violence therapy and programs, and was enrolled in individual therapy and groups for substance abuse and parenting. In domestic violence therapy mother had disclosed "a history of physical, verbal, and emotional domestic violence at the hands of the abuser" and had been an active participant, working through "the effects of how the domestic violence has impacted her and her children." The drug treatment program reported mother was active during sessions and eager to express her opinions, although she must learn commit to changes in her life to obtain reunification with her children.

Mother tested positive for marijuana on several occasions and missed one test, which was treated as a positive test. Mother also did not report for testing after the missed test, although she continued with her classes and counseling.

Following a contested hearing held on October 29, 2013, the juvenile court sustained the allegations in the petition and ordered the children be removed from mother and father's custody. The court noted "this started out as a drug case, but it blossomed into a domestic violence case and that cannot be ignored as a mother putting the children at risk when she allows father or somebody else in her future to commit domestic violence on her or in front of the children." The court ordered monitored visitation and reunification services for both parents. For mother, the court ordered a drug and alcohol

6

program with testing, a domestic violence program with a support group for victims, and parenting programs. For father, the court ordered drug awareness programs and 52 weeks of domestic violence and parenting programs.

Mother timely appealed. Father did not appeal.

## DISCUSSION

### 1. *Standard of Review*

In reviewing the jurisdiction and disposition orders, "we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193 (*Heather A.*).) Thus, "[w]e do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts. [Citation.] The judgment will be upheld if it is supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) But "[s]ubstantial evidence must be of ponderable legal significance. It is not synonymous with 'any' evidence. [Citation.] The evidence must be reasonable in nature, credible, and of solid value. [Citation.] The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order." (*Ibid.*)

### 2. *The Merits of Mother's Appeal Should Be Addressed*

DCFS argues we need not address mother's challenge to the jurisdictional findings as to her because the juvenile court properly exercised jurisdiction based on the allegations against father. DCFS is generally correct. (See *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 (*Alysha S.*) ["[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring her within one of the statutory definitions of a dependent."]; see also *In re Alexis H.* (2005) 132 Cal.App.4th 11, 16 [same].) However, the court in *In re Drake M.*

7

(2012) 211 Cal.App.4th 754 (*Drake M.*), rejected an identical argument and proceeded to the father's jurisdictional challenge even though jurisdiction would have been sustained based on allegations against the mother. We set forth that court's analysis below and, for the reasons identified, we exercise our discretion to reach mother's appeal in this case.

"'"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the [trial] court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.] However, we generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [citation]. [¶] Here, the outcome of this appeal is the difference between father's being an 'offending' parent versus a 'non-offending' parent. Such a distinction may have far-reaching implications with respect to future dependency proceedings in this case and father's parental rights. Thus, although dependency jurisdiction over Drake will remain in place because the findings based on mother's conduct are unchallenged, we will review father's appeal on the merits." (*Drake M., supra*, 211 Cal.App.4th at pp. 762-763.)

### 3. *Substantial Evidence Did Not Support Jurisdiction Based on Mother's Conduct*

"Under section 300, subdivision (b), the juvenile court may assert jurisdiction over a child when '[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness,

8

developmental disability, or substance abuse. . . . The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness.' Thus, '[t]he three elements for jurisdiction under section 300, subdivision (b) are: "'(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the [child], or a "substantial risk" of such harm or illness.'"'" (*In re John M.* (2012) 212 Cal.App.4th 1117, 1124.)

The two incidents of domestic violence in this case were insufficient to demonstrate a substantial risk of harm to the children. "Physical violence between a child's parents may support the exercise of jurisdiction under section 300, subdivision (b) but only if there is evidence that the violence is ongoing or likely to continue and that it directly harmed the child physically or placed the child at risk of physical harm." (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717; see *In re J.N.* (2010) 181 Cal.App.4th 1010, 1025 (*J.N.*) ["'[P]revious acts of neglect, standing alone, do not establish a substantial risk of harm; there must be some reason beyond mere speculation to believe they will reoccur.'"].) The juvenile court believed the children would be harmed by future acts of domestic violence if mother "*allows* father or somebody else in her future to commit domestic violence on her or in front of the children." (Italics added.) There are at least two problems with this statement. First, the juvenile court's speculation that some unidentified person in the future might assault mother cannot constitute substantial evidence of future harm. (See *In re Steve W.* (1990) 217 Cal.App.3d 10, 22.) Second, nothing in the record suggesting mother "allowed" father to assault her in the past or that she would "allow" him or anyone else to assault her in the future. As soon as father broke the television in September 2012, mother kicked him out of the home. When father escalated the violence in January 2013 by returning to the home and punching mother while they were outside the house, mother called the police, had him arrested, and obtained a temporary restraining order. Although mother did not obtain a permanent order, in the months between that incident and the filing of the petition in this case, no further domestic violence incidents were reported, mother had no contact with father

9

other than to discuss the children, and father's only contact with the children was not in the home. Father is now in prison, so the prospects of future domestic violence between him and mother are minimal. Mother also entered domestic violence therapy prior to the petition in this case, suggesting she was independently aware of and addressing any lingering abuse issues before DCFS got involved.

In *Alysha S.*, the court found similar allegations insufficient to state a claim for dependency jurisdiction. There, the petition alleged, "'The father was physically abusive and violent to the mother and was arrested and incarcerated for domestic violence against the mother . . . . [¶] The mother initially obtained a restraining order against the father[;] however[,] . . . she had the restraining order dropped in spite of advice by Child Protective Services not to do so, and resumed living with the father.' Even construing this pleading expansively to allege more than one instance of violence against the mother, it does not allege that the violence was perceived by or affected the child and did not establish a 'failure to protect' her." (*Alysha S., supra*, 51 Cal.App.4th at p. 398.) The facts here do not even rise to that level because mother did not resume living with father and only had contact with him to discuss the children. Although the children were present during the September 2012 incident and "saw and heard everything," there was no evidence they were in harm's way or father targeted them for abuse, and they were not present during the more serious January 2013 assault. DCFS also presented no evidence, such as expert testimony, suggesting the children were negatively affected by these incidents in any way. (Cf. *Heather A., supra*, 52 Cal.App.4th at pp. 195-196 [expert testimony of effect spousal abuse had on children supported finding jurisdiction].)

DCFS relies on several cases to argue the existence of domestic violence in the same household with the children was sufficient to support jurisdiction, but those cases either arose in different contexts or involved more serious abuse than in this case. (*In re Sylvia R.* (1997) 55 Cal.App.4th 559, 561-562 [father arrested twice for spousal abuse; issue was whether dismissal of criminal charges defeated termination of reunification services]; *Heather A., supra*, 52 Cal.App.4th at pp. 194-196 [five violent incidents with children in the home; father had history of abusing partners; expert testified as to effects

10

of abuse on the children]; *In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1470, fn. 5, 1472 [pattern of physical abuse of both spouse and child].) Unlike those cases, the two acts of domestic violence in this case, coupled with the lack of evidence of any effect whatsoever on the children, were insufficient to demonstrate a substantial risk of harm.

That leaves the evidence of mother's substance abuse, but that was likewise insufficient to demonstrate the children were at a substantial risk of harm. Mother used marijuana pursuant to a valid medical marijuana card. There was no evidence she used it excessively, let alone "abused" it, and she did not use it at home or around the children, who were properly supervised while mother used marijuana outside the home. Indeed, the older daughter was not even aware of mother's use—she did not see mother smoking cigarettes and was unable to identify any illegal substances. Because there was no evidence mother's marijuana use affected her children in any way, her "continuing usage and testing positive for cannabinoids on drug screens, without more, is insufficient to show that [the children were] at substantial risk of serious physical harm or illness." (*Drake M., supra*, 211 Cal.App.4th at p. 768; compare *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451-453 [acknowledging "the mere use of marijuana by a parent will not support a finding of risk to minors," but finding principle inapplicable because father previously used marijuana illegally, he used it while his children were home, and his use had a negative effect on his demeanor toward the children].)

Further, although mother tested positive for and admitted using cocaine once, she never tested positive again, she viewed the single use as a "mistake," and vowed not to do it again. She also enrolled in substance abuse therapy. (See *J.N., supra*, 181 Cal.App.4th at pp. 1025-1026 [considering parent's current understanding of and attitude toward past conduct, as well as participation in educational programs, in assessing present risk based on a single episode of endangering conduct].) Absent any evidence of neglect from mother's drug use, this case falls within the line of authority holding "the mere usage of drugs by a parent is not a sufficient basis on which dependency jurisdiction can be found." (*Drake M., supra*, 211 Cal.App.4th at p. 764; see *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003 [same].)

## 4. *The Disposition Order Must Be Vacated*

Because we reverse the jurisdiction order insofar as it is based on mother's conduct, we cannot say the juvenile court correctly exercised its discretion in removing the children from her custody. We must therefore vacate the disposition order and remand for the court to issue a new disposition order.[4] (See *In re David M.* (2005) 134 Cal.App.4th 822, 833.)

## DISPOSITION

That part of the jurisdictional order that is based on mother's conduct is reversed. The disposition order is vacated, and the matter is remanded for the juvenile court to issue a new disposition order consistent with this opinion. In all other respects the juvenile court's orders are affirmed.


FLIER, J.

I CONCUR:


RUBIN, Acting P. J.

_____

[4] We realize that with the passage of time, other issues may have been presented regarding the family. Our decision, of course, does not preclude further action based on events that occurred after those set forth in the record on appeal. (§ 342.)

*In re J.S. et al.; Los Angeles County Department of Children and Family Services v. C.G.*

**B252623**

**Grimes, J., Dissenting.**

Respectfully, I dissent.

The focus of dependency proceedings is on the protection of minor children.  (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491-1492.)  To acquire jurisdiction over a child, a juvenile court need only "find that one parent's conduct has created circumstances triggering section 300." (*Id.* at p. 1491.)  "[I]t is commonly said that a jurisdictional finding involving one parent is ' "good against both.  More accurately, the minor is a dependent if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent." ' [Citation.]" (*Id.* at p. 1492.)  Jurisdiction over the children in this case is proper based on father's conduct, and mother does not contend otherwise.  Because father has not appealed from the jurisdiction and disposition orders, and mother does not challenge the court's orders concerning father, I agree with the majority that the children will remain dependents of the court notwithstanding reversal of the orders concerning mother.

As the majority acknowledges, there are circumstances under which courts should consider one parent's claim to be a nonoffending parent, even though dependency jurisdiction continues over the child in any event.  (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.)  But the evidence concerning mother's conduct that is summarized by the majority demonstrates that mother is not a nonoffending parent, and therefore, I would decline to entertain her jurisdictional contentions.  (*In re I.A.*, *supra*, 201 Cal.App.4th at p. 1492 ["an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence"].)

On the merits, the recitation of the facts by the majority demonstrates that substantial evidence supports the jurisdictional findings as to both mother and father, for the domestic violence and for mother's drug use.  In reviewing a challenge to the

1

sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "[W]e draw all reasonable inferences from the evidence to support the findings and orders of the dependency court" (*ibid.*), and "[w]e do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court" (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321). The juvenile "court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion." (*In re Christopher H*. (1996) 50 Cal.App.4th 1001, 1006; see also *In re A.L.* (2010) 188 Cal.App.4th 138, 142-146.)

In my view, the majority has departed from these basic principles of appellate review. I would affirm the jurisdiction and disposition orders as to mother.


GRIMES, J.


2