Filed 10/30/20  In re T.H. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re T.H, a Person Coming Under the Juvenile Court Law. | B304334 |
| | (Los Angeles County Super. Ct. No. 19CCJP06994B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. G.H., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Donna B. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

K.S. (Mother) lived with G.H. (Father) and their three-year-old daughter, T.H. Mother's other daughter, ten-year-old Fatima, lived with her father, Saul. When Fatima was removed from Saul's care, she disclosed Father had physically abused Mother. This allegation of domestic violence triggered a Los Angeles County Department of Children and Family Services (Department) investigation of T.H.'s welfare, one that ultimately led to the filing of a dependency petition sustained by the juvenile court. We are asked to decide whether the juvenile court correctly assumed jurisdiction over T.H., removed her from Father's custody (placing her with Mother), and ordered Father to participate in a domestic violence and counseling programs.

## I. BACKGROUND

In October 2019, the Los Angeles County Sheriff's Department executed a search warrant at the home of Mother's former partner, Saul. The deputies found firearms, drugs, and drug paraphernalia. Because Fatima was present, a Department social worker was called in.

Fatima, born in 2008, is the child of Mother and Saul. Mother and Saul separated when Fatima was about four years old, and Fatima lived with Saul. Fatima said she visited Mother "occasionally." When the social worker asked Fatima where she would like to stay if she could not stay with Saul, Fatima said she would rather stay with an aunt than with Mother because Mother's partner—i.e., Father—made her uncomfortable.

Fatima told the social worker that Father was "always drinking beer" and telling her what to do. Mother would defend Fatima when conflicts with Father arose, but this caused Mother and Father to argue. Fatima reported that, on one occasion when Mother and Father were arguing in another room, Fatima heard a "thud" and someone trying to open the door. When the door opened, Mother emerged with a "busted lip" and was bleeding. Mother told Fatima she (Mother) hit herself with the door while

2

trying to open it. Fatima said she checked the door for blood or other marks and found none, so she "knew" Mother was lying.

A Department social worker interviewed Mother and she said she understood Fatima was not comfortable around Father but she did not know why. Mother acknowledged she sometimes argued with Father, but she claimed the arguments never became physical. She specifically denied Father ever hit her causing an injury to her lip. Mother said she suspected influence from Saul's family was the reason why Fatima was falsely reporting domestic violence. Mother also claimed T.H.'s father was not Father, but a man named Fernando.

The Department filed a dependency petition alleging T.H. came within the jurisdiction of the juvenile court under Welfare and Institutions Code[1] section 300, subdivision (a) (substantial risk of serious physical harm inflicted nonaccidentally by a child's parent) and subdivision (b) (substantial risk of serious physical harm). The petition alleged Mother and Father engaged in a violent physical altercation in T.H.'s home (the episode in which Mother's lip was injured) and Father's violent conduct endangered T.H.'s physical health and safety.[2]

At an initial detention hearing, the juvenile court ordered T.H. released to Mother under the Department's supervision. A few weeks after the detention hearing, Mother and Father informed the Department that Father in fact is T.H.'s biological father. Father also indicated, contrary to Mother's earlier statement, that he lived with Mother and T.H. before the juvenile court ordered the parents to have no contact. Mother explained

---

[1]     Undesignated statutory references that follow are to the Welfare and Institutions Code.

[2]     The Department alleged Fatima came within the juvenile court's jurisdiction on the same grounds and based on the conditions in Saul's home. Allegations concerning Fatima are not at issue in this appeal.

she lied about T.H.'s paternity because she did not want to involve Father in the case and because she feared losing custody of T.H.  Father said he denied paternity of T.H. because "he did not want to get involved in the matter" and he deferred to Mother's decision not to disclose his identity as T.H.'s father. Mother continued to deny any violence had occurred between her and Father.

In a follow-up interview with a Department social worker, Fatima described the domestic violence episode alleged in the dependency petition in more detail.  She said it occurred about a year earlier, around November 2018.  Fatima was in the living room watching television when Mother went into a bedroom. T.H., who was about two years old at the time, followed Mother. Fatima heard "angry whispering" and then a "thud."  Mother came out of the room with a bloody lower lip, which she cleaned with a paper towel and then tried to cover with a bandage. Mother told Fatima she hurt herself on the door, which was difficult to open because of "a water bump on the floor."  Fatima checked the floor, however, and found no bump.  Fatima told the social worker she believed Father threw Mother against the door. Fatima also said she told a paternal aunt about the incident, but the appellate record is not clear as to when Fatima made that disclosure.

In interviewing others, the Department learned Mother and Father's past relationships had also involved physical violence.  Saul told a Department social worker that Mother called the police about six years earlier when he threw a cup of water at her and pushed her to "get her off [him]."  (Mother recalled "pushing and pulling" with Saul, but nothing else.) Fatima's paternal aunt said Mother left a mark on Saul's face during a fight.  Father reported Mother told him Saul hurt her in the past, but Father did not know any details; Father believed Mother was "escaping from those problems" when she left Saul. As for Father, another of Fatima's paternal aunts reported his

4

former partner told another family member that Father used to "push and shove" her.

At the combined jurisdiction and disposition hearing, the juvenile court found dependency jurisdiction over T.H. was warranted. The court recognized Mother and Father denied domestic violence between them, but the court believed Mother was not credible, pointing to her conceded lie about T.H.'s parentage. The juvenile court ordered T.H. removed from Father because he was "in denial" about the incident Fatima witnessed and because there may have been other instances of domestic violence (since Fatima was not always in the house). The juvenile court placed T.H. with Mother under the Department's supervision, with Father to have visits monitored by someone other than Mother. Father was ordered, over his objection, to participate in a 52-week certified batterer intervention program, parenting classes, and individual counseling.

Father noticed an appeal and challenges the jurisdiction finding, the removal order, and his court-ordered case plan.

## II. DISCUSSION

Father contends Fatima's account of Mother's bloody lip is not substantial evidence he struck Mother and, even if it were, an isolated instance of domestic violence still cannot support the juvenile court's jurisdiction finding. But Fatima gave a consistent and detailed report to Department social workers and the parents' credibility was diminished by their dishonesty about Father's parentage. The juvenile court's decision to assume jurisdiction over T.H. is accordingly supported by substantial evidence on this record.

Father's involvement in domestic violence and lack of forthrightness with the Department similarly support the juvenile court's conclusion that there were no reasonable means to protect T.H. without removing her from his physical custody. Father and Mother's lack of cooperation, in particular,

5

distinguish this case from others in which removal was not warranted despite more severe domestic violence. Father's court-ordered case plan is also fully justified. There is no reason to believe only the most violent domestic abusers will benefit from the programs the juvenile court ordered.

### A. Substantial Evidence Supports the Jurisdiction Finding

The juvenile court exercised dependency jurisdiction over T.H. under section 300, subdivisions (a) and (b). Because substantial evidence supports the juvenile court's jurisdiction finding under section 300, subdivision (b), we need not consider Father's challenge to the juvenile court's finding under section 300, subdivision (a). (*In re I.J.* (2013) 56 Cal.4th 766, 773 ["'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence'"] (*I.J.*).)

"Section 300, subdivision (b)(1), authorizes a juvenile court to exercise dependency jurisdiction over a child if the 'child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, or . . . by the inability of the parent . . . to provide regular care for the child due to the parent's . . . mental illness, developmental disability, or substance abuse.' (§ 300, subd. (b)(1).)" (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.) Section 300, subdivision (b)(1) "does not require that a child

6

actually be abused or neglected before the juvenile court can assume jurisdiction." (*I.J.*, *supra*, 56 Cal.4th at 773.)

We review the juvenile court's jurisdiction findings for substantial evidence. (*In re R.T.* (2017) 3 Cal.5th 622, 633.) We draw all reasonable inferences from the evidence to support the findings and we review the record in the light most favorable to the court's determinations. (*Ibid.*)

Father contends Fatima's account of the incident in which Mother's lip was injured amounts to no more than a "guess" about what happened in another room. That, however, understates Fatima's rather detailed recollection of what occurred and disregards proper inferences that can be drawn from Fatima's own contemporaneous efforts to discover what caused Mother's injured lip.

Fatima said she heard "angry whispering" and then a thud. That the angry whispering preceded the thud is good reason to disbelieve Mother's claim to have injured her lip by hitting herself with the door when it stuck while she was opening it. Further, when Mother gave that explanation to Fatima at the time when the injury occurred, Fatima checked for physical evidence to corroborate Mother's account (a bump on the floor or blood on the door) and found none.

Father nevertheless argues the juvenile court was wrong to believe Father caused Mother's injury because "the victim of such a hit would normally cry out or yell or do both." That, however, is speculation—Father adduces no evidence that this is what "normally" would happen, and even if there were such evidence, this case still may not be one that falls into the supposed normal pattern. Fatima consistently described what she heard and subsequently saw (see *People v. Brooks* (2017) 3 Cal.5th 1, 57 ["'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence'"]) and the credibility of the parents' innocent explanations for what

7

occurred were undermined by their acknowledged untruths on other matters.

Father further argues, relying on *In re Daisy H.* (2011) 192 Cal.App.4th 713, that even if he did hit Mother there is no evidence this isolated incident placed T.H. at risk of harm. (*Id.* at 717 ["Physical violence between a child's parents may support the exercise of jurisdiction under section 300, subdivision (b) but only if there is evidence that the violence is ongoing or likely to continue and that it directly harmed the child physically or placed the child at risk of physical harm"].) Accepting for argument's sake the proposition that a jurisdiction finding cannot be based on a single episode of endangering conduct without evidence that such conduct is likely to reoccur, there is substantial evidence that the domestic violence between the parents here was likely to continue. Mother, Saul, and Saul's relatives all recounted at least one physical altercation between Mother and Saul, and one of Saul's relatives reported an account of pushing and shoving in Father's last relationship. This history, combined with Mother and Father's denial of the incident and initial efforts to impede the Department's investigation, meet the *In re Daisy H.* standard.[3] (See, e.g., *In re T.V.* (2013) 217 Cal.App.4th 126, 133 ["A parent's past conduct is a good predictor of future behavior"].)

---

[3] T.H. herself was not injured, but this does not undermine the juvenile court's finding that the violence in her presence put her at risk. According to Fatima, T.H. followed Mother into the bedroom immediately before Fatima heard the argument and the thud. A Department social worker also observed T.H. was bonded to Mother and "follow[ed] her around." It is well established that domestic violence between adults poses a risk of harm to children like T.H. (*In re E.B.* (2010) 184 Cal.App.4th 568, 576, disapproved on another ground by *Conservatorship of O.B.* (2020) 9 Cal.5th 989.)

8

B.    *Substantial Evidence Supports the Order Removing T.H. from Father's Custody and Placing Her with Mother*

Under section 361, subdivision (c)(1), a dependent child may not be removed from the custody of a parent with whom the child resides unless the juvenile court finds by clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).) "'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.' [Citation.] The court may consider a parent's past conduct as well as present circumstances. [Citation.]" (*In re N.M.* (2011) 197 Cal.App.4th 159, 169-170.) We review a removal order for substantial evidence. (*In re V.L.* (2020) 54 Cal.App.5th 147, 154; see also *Conservatorship of O.B.*, *supra*, 9 Cal.5th at 1011.)

Relying on *In re Basilio T.* (1992) 4 Cal.App.4th 155 (*Basilio T.*), Father contends removal of T.H. from his custody was unwarranted because there was no evidence of "extreme . . . parental abuse or neglect." (*Basilio T.*, *supra*, at 171.) In *Basilio T.*, police responded to two instances of domestic violence between the parents in two months. (*Id.* at 160.) In one instance, the father struck the mother; in the other instance, he assaulted her with a knife. (*Ibid.*) The Court of Appeal affirmed a jurisdiction finding based on these incidents, but it reversed an order removing the children from the parents' custody. (*Id.* at 169.) It reasoned that although "these incidents presumably occurred in or near the minors' presence, it is significant that neither incident directly affected either minor physically, i.e., the adults were fighting with each other and not directing their

9

anger at the minors or abusing them." (*Id*. at 171.) The Court of Appeal also emphasized that less drastic alternatives to removal were available because the parents were "active in seeking couples counseling and in-home supportive services." (*Id*. at 172.)

That Father did not wield a knife against Mother does not preclude a finding that his hitting or shoving Mother in the presence of T.H. presented a substantial danger to T.H.'s safety.[4] The juvenile court properly relied on the violence described by Fatima, plus Mother and Father's history of violence with former partners, to conclude the requisite substantial danger to T.H. was present. That Mother did not call for help or tell anyone when Father injured her lip does not mitigate the risk to T.H. To the contrary, Mother's failure to seek help, both parents' initial denial of Father's paternity, and both parents' continuing denial of the abuse underscore the insufficiency of alternatives to removal; unlike the parents in *Basilio T*., nothing in the record indicates Mother or Father were actively seeking services to address their domestic violence issues. (See, e.g., *In re Maria R*. (2010) 185 Cal.App.4th 48, 71 [parent's refusal to cooperate with child welfare agency and denial that children were at risk of harm supported removal], disapproved on another ground by *I.J*., *supra*, 56 Cal.4th 766.)

---

[4] The standard for removal under section 361, subdivision (c)(1) "has changed significantly since *Basilio T*. was decided. At that time, . . . section 361 allowed removal only if there was 'a substantial danger to the physical health of the minor . . . .' (Welf. & Inst. Code, former § 361, subd. (b)(1), Stats.1990, ch. 182, § 7, p. 1307.) Since then, however, the subdivision has been amended (Stats. 1996, ch. 1084, § 4, p. 7606; Stats. 1996, ch. 1139, § 8.5, p. 8145) so that it now allows removal if there is 'a substantial danger to the physical health, *safety, protection, or physical or emotional well-being* of the minor . . . .' (Welf. & Inst. Code, § 361, subd. (c)(1), italics added.)" (*In re J.S*. (2014) 228 Cal.App.4th 1483, 1493-1494.)

Father additionally seeks reversal of the removal order because the juvenile court did not "make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home" and "state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).) The latter assignment of error is forfeited and the former is harmless at most.

Father did not object below to the absence of a statement of reasons for removing T.H. from his care—an easily corrected error. The point is therefore forfeited. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"]; *In re S.C.* (2006) 138 Cal.App.4th 396, 406.)

As for alternatives to removal, the juvenile court made the requisite finding, but only did so expressly in a boilerplate minute order. Assuming this was error, the error was harmless. (See, e.g., *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218 [the juvenile court's failure to make such findings "will be deemed harmless where 'it is not reasonably probable such finding, if made, would have been in favor of continued parental custody'"].)

As Father recognizes, his and Mother's lies about his relationship to T.H. were "not helpful." The juvenile court found Fatima more credible than Mother and Father and stressed that, "based on [the] parents' lack of honesty, . . . the *only* way the court ensures that there are no subsequent incidents of [domestic violence] or [sic] that [Father] be removed from the home." (Emphasis ours.) That is correct in our estimation: the efficacy of the alternatives Father raises on appeal (frequent social worker visits and couples counseling) still require a baseline of honesty and good-faith cooperation that the juvenile court found—with good reason—to be lacking. Had the juvenile court made a more detailed reasonable efforts finding, it is not reasonably probable it would have been in Father's favor.

11

C.    *The Order Compelling Father to Participate in a Domestic Violence Program Was Not an Abuse of Discretion*

"If a child is adjudged a dependent child of the court on the ground that the child is a person described by Section 300, the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child, including medical treatment, subject to further order of the court." (§ 362, subd. (a).) In this case, because T.H. remained with a current custodial parent (i.e., Mother), the juvenile court had discretion to order enhancement services for Father. (*In re Destiny D.* (2017) 15 Cal.App.5th 197, 213 ["An order for enhancement services is subject to the court's discretion"].)

Father contends the juvenile court abused its discretion by ordering him to participate in a 52-week domestic violence intervention program, parenting classes, and individual counseling when these were, in his view, not necessary. His argument rests on his view that the injury he inflicted on Mother was an isolated incident and "relatively minor compared to the domestic violence found in most dependency cases." Both assertions are unconvincing. Even if this was the first episode of domestic violence between Mother and Father, there is no good reason to believe it would be the last if nothing were to change. And even if a "busted lip" is a "relatively minor" injury, even relatively minor injuries between parents sharing custody of a child should be avoided. The juvenile court's case plan for Father was far from an abuse of its discretion. (*In re A.L.* (2010) 188 Cal.App.4th 138, 145-146.)

12

DISPOSITION

The juvenile court's orders are affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, Acting P. J.

We concur:



MOOR, J.



KIM, J.